PEOPLE v HUYSER

Docket No. 184611. Submitted September 10, 1996, at Grand Rapids.
Decided January 28, 1997, at 9:20 A.M. Leave to appeal sought.

Wesley C. Huyser was convicted by a jury in the Allegan Circuit
Court, Harry A. Beach, J., of second-degree criminal sexual con-
duct. The defendant had been charged with first-degree criminal
sexual conduct after the eight-year-old daughter of a former girl-
friend told a school counselor that the defendant had molested her
when she was five years old. The prosecution had retained a doctor
as an expert witness, and the doctor had examined the complain-
ant, had found evidence consistent with vaginal penetration, and
had prepared a report to that effect. Because the doctor had died
by the time of trial, the prosecution, over a defense objection, was
permitted to have the doctor's report admitted into evidence under
the business records exception to the hearsay rule. The only other
evidence of sexual penetration was the testimony of the complain-
ant. A second examination of the complainant in which no evi-
dence of penetration was discovered was never mentioned during
the trial. The defendant appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion in admitting the doctor's
report under the business records exception to the hearsay rule,
MRE 803(6). The business records exception to the hearsay rule is
grounded on the premise that business records are inherently trust-
worthy because unintentional mistakes made in the preparation of
a business record are likely to be detected and corrected in the reg-
ular course of business. Here, the doctor's report was not prepared
in the regular course of business, but rather was prepared for the
purpose of the litigation of the criminal charge that was brought
against the defendant. Under such circumstances, the doctor's
report does not have the inherent trustworthiness of a record kept
in the regular course of business exclusively for a business pur-
pose. The trustworthiness of this particular report is further under-
mined by the apparent failure to duplicate the results of that report
in a subsequent examination of the complainant.

2. Because the doctor's report was the only evidence in support
of the complainant's assertion that she had been raped, and

because the testimony of the complainant concerning the sexual penetration was less than compelling, the erroneous admission of the doctor's report cannot be considered to be harmless.

Reversed.

EVIDENCE — HEARSAY — BUSINESS RECORDS — ABUSE OF DISCRETION.

It is an abuse of discretion to admit into evidence under the business records exception to the hearsay rule a report prepared for the purpose of litigation where the report has not been shown to possess the trustworthiness inherent in a record kept in the regular course of business (MRE 803[6]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Frederick Anderson*, Prosecuting Attorney, and *Yvonne G. Dzialowski*, Assistant Prosecuting Attorney, for the people.

*Andrew J. Marks* and *Jane A. Vandervelde*, for the defendant.

Before: MICHAEL J. KELLY, P.J., and O'CONNELL and K. W. SCHMIDT*, JJ.

PER CURIAM. Defendant appeals as of right his conviction by jury of second-degree criminal sexual conduct. MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). We reverse.

Defendant moved into the home of Heidi Phillips in 1988 and remained there for approximately one and one-half years as Phillips' live-in boyfriend. Phillips' five-year-old daughter also lived with the couple. Approximately three years after defendant moved out of Phillips' home, the daughter alleged to a school counselor that defendant had sexually molested her. Defendant was charged with first-degree criminal sexual conduct.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The prosecution retained Dr. David Hickok as an expert witness. He examined the complainant, found evidence consistent with vaginal penetration, and prepared a report to that effect. After being informed that Dr. Hickok would offer testimony supporting the prosecution's position, the prosecution added him to its witness list. Unfortunately, Dr. Hickok passed away before trial.

The record indicates that at least one additional examination was performed on the complainant. It is unclear whether Dr. Hickok or another prospective expert witness performed this additional examination. However, this second examination revealed no evidence of vaginal penetration.

At trial, the complainant testified that defendant had sexually penetrated her vagina; the defendant denied it. The complainant, who was ten at the time of trial, expressly denied certain details that one would have expected her to testify to affirmatively had she been sexually penetrated by defendant, particularly if it had been her first experience with intercourse. Because Dr. Hickok had passed away, the prosecution was unable to introduce evidence of his examination of the complainant through his testimony. Instead, over objection of defense counsel, the prosecution had one of Dr. Hickok's employees read significant portions of the report to the jury. The court ruled that the report was admissible pursuant to MRE 803(6), *Records of regularly conducted activity*.[1] The somewhat illegible report was, apparently, then typed and made available to the jury. Defense

---

[1] Because the report was not generated for the purpose of treating the complainant, it did not fall within MRE 803(4), *Statements made for purposes of medical treatment or medical diagnosis in connection with*

counsel presented no cross-examination, and no mention was made of the subsequent examination in which no evidence of penetration was discovered. As stated above, the jury found defendant guilty of second-degree criminal sexual conduct.

On appeal, defendant raises several allegations of error. Because we find defendant's first argument sufficiently meritorious to warrant reversal of his conviction, we do not address the remainder.

Defendant argues that the trial court abused its discretion in admitting into evidence the report of expert witness Dr. Hickok pursuant to MRE 803(6), commonly referred to as the business records exception to the hearsay rule.[2] As explained in *Solomon v Shuell*, 435 Mich 104, 120; 457 NW2d 669 (1990), "the traditional business records hearsay exception is justified on grounds of trustworthiness: unintentional mistakes made in the preparation of a record would very likely be detected and corrected." While this exception has evolved and been expanded from its "traditional" roots, "trustworthiness, under the cur-

---

*treatment*. See *Slayton v Michigan Host, Inc*, 144 Mich App 535, 553, n 8; 376 NW2d 664 (1985).

[2] MRE 803(6) provides as follows:

A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

rent Rules of Evidence, no longer serves as a mere philosophical justification for the admission of evidence otherwise excluded as hearsay. Rather, under MRE 803(6) and FRE 803(6), trustworthiness is itself an express threshold condition of admissibility." *Solomon, supra,* pp 122-123. Thus, "the trial court, in its discretion, may exclude evidence meeting the literal requirements of the business records exception where the underlying circumstances indicate a lack of the trustworthiness business records are presumed to have." *Id.,* p 122.

As set forth in *Carlisle v General Motors Corp,* 126 Mich App 127, 129; 337 NW2d 4 (1983), "[a] physician's report is hearsay unless it falls into an exception or exclusion to the hearsay rules." MRE 803(6) provides that records regularly generated by a "business" in the course of its activities are not excluded by the rule barring hearsay unless the circumstances surrounding the preparation of the records indicate a lack of trustworthiness. In general, a record "prepared for the purpose of litigation" lacks the trustworthiness that is the hallmark of a document properly admitted pursuant to MRE 803(6). 29A Am Jur 2d, Evidence, § 1313, pp 720-721. Michigan adheres to this general rule. *People v Cortez,* 131 Mich App 316, 330; 346 NW2d 540 (1984) ("documents prepared for use in litigation are excluded by this qualification [i.e., trustworthiness]"); *Attorney General v John A Biewer Co, Inc,* 140 Mich App 1, 17; 363 NW2d 712 (1985) ("documents prepared for use in litigation are not admissible as records of regularly conducted activities"). As explained in *Biewer,* "where the record is prepared for the purpose of litigation, the record does

not have the inherent trustworthiness that a record kept in the regular course of business does." *Id.*

Assuming arguendo that a report generated by an expert witness satisfies the positive requirements of MRE 803(6), the trial court abused its discretion in admitting into evidence Dr. Hickok's report because the circumstances surrounding its preparation indicate a lack of trustworthiness. The prosecution retained Dr. Hickok not to treat the complainant, but strictly to utilize his testimony as an expert witness in their prosecution of defendant. Thus, any document that Dr. Hickok prepared that pertained to his examination of the complainant necessarily originated solely for purposes of litigation. Because of this, Dr. Hickok's report lacks the trustworthiness of a record generated exclusively for business purposes. *Cortez, supra; Biewer, supra.* Additionally, the fact that the results obtained by Dr. Hickok with respect to evidence of penetration could not be duplicated in a subsequent medical examination only further undermines any trustworthiness his report might have had.

On appeal, the prosecution argues that our Supreme Court's decision in *People v Kirtdoll,* 391 Mich 370; 217 NW2d 37 (1974), expressly allows admission into evidence pursuant to MRE 803(6) of medical reports such as that prepared by Dr. Hickok. We believe the prosecution has misapprehended the holding of *Kirtdoll. Kirtdoll* stands for the propositions that hospital records generated for use in medical treatment may generally be regarded as trustworthy for purposes of MRE 803(6) and that such records are admissible in criminal as well as civil cases. As noted above, the report prepared by Dr. Hickok is not a "hospital record," and, more significantly, was not

generated for purposes of medical treatment. In fact, the *Kirtdoll* Court rested its finding of trustworthiness on the fact that hospital records "are made and relied upon in affairs of life and death," *Id.*, p 386, n 9, quoting 6 Wigmore, Evidence (3d ed), § 1707, p 36. Because Dr. Hickok's report was not prepared in even arguably analogous circumstances, the trustworthiness ascribed to hospital records may not reasonably be extended to encompass a record prepared by a medical expert witness who was not a treating physician.

We cannot conclude that the admission of Dr. Hickok's report constituted harmless error. An error in the admission of evidence may require the reversal of a conviction where, after considering the nature of the error and assessing its effect in light of the weight and strength of the properly admitted evidence, *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996), refusal to vacate the judgment would be "inconsistent with substantial justice." MCR 2.613(A). Here, the report of Dr. Hickok was the only support for the complainant's assertion that she had been raped. The complainant's testimony, even taking into account her youth, was less than compelling. Further, no other witness offered any testimony suggesting that they had reason to believe that defendant had sexually molested the complainant. In fact, Heidi Phillips, the mother of the complainant and former girlfriend of defendant, conceded that she had never observed anything improper occurring between defendant and the complainant; that she had never seen anything that would have aroused her suspicion; that the complainant had never complained of soreness or injury to her vaginal area; and that the complainant never

appeared to be afraid of defendant. Thus, in light of the crucial nature of the evidence, we do not believe its erroneous admission may be considered to be harmless.

Reversed.

K. W. SCHMIDT, J., concurred.

MICHAEL J. KELLY, P.J. I concur in the result only.